**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**REESE LLP**
Charles D. Moore
*cmoore@reesellp.com*
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55412
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**BEN TRAVIS LAW, APC**
Ben Travis
ben@bentravislaw.com
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Phone: (619) 353-7966

*Counsel for Plaintiff and the Proposed Class*

United States District Court
Eastern District of New York

| | |
|---|---|
| Karin Piotroski individually and on behalf of all others similarly situated<br><br>Plaintiff<br><br>- against -<br><br>La Fermière, Inc.<br><br>Defendant | Case No.<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Karin Piotroski ("Plaintiff"), by her undersigned attorneys alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

## INTRODUCTION

1. This is a proposed class action brought on behalf of New York consumers of Defendant La Fermière, Inc.'s ("Defendant") yogurt products (collectively the "Products" or individually the "Product")[1] who have purchased the Products with the misrepresentation on the front of the packaging that the Products are from France.

2. The front label on the Products are all identical, except for the name of the flavor, the picture associated with the flavor, the size of the jar, and a "Seasonal Flavor" stamp for the seasonal flavors.

3. Defendant's marketing, labeling, and sale of the Products mislead reasonable consumers to believe that the yogurts are made in France, by using: (1) the name of the product itself – La Fermière – a visibly French word meaning "the lady farmer"; and (2) "Naturally French" on the label ("French Representations").

4. Consumers interpret the French Representations to mean that the Products are manufactured in and imported from France. Unfortunately for consumers, the French Representations are false and misleading because the Products are manufactured in New York.

5. By labeling the Products with the French Representations, Defendant creates consumer deception and confusion. A reasonable consumer purchases the Products believing that they are from France. However, a reasonable consumer would not deem the Products to be from France if they knew the Products were manufactured in New York.

---

[1] The yogurts are sold in several flavors, including, vanilla bean, pressed lemon, orange blossom honey, rose, lavender, mango passion fruit, raspberry blueberry, peach apricot, strawberry pomegranate, salted caramel, pineapple coconut

1

6. Defendant's misrepresentations about the Products were uniform and were communicated to Plaintiff, and every other member of the Class, at every point of purchase and consumption throughout the Class Period.

7. Plaintiff now brings this action to stop Defendant's misrepresentation and recover the monies she paid for the Products as a result of the misrepresentation, as well as statutory damages and the other relief detailed below.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) ("CAFA"). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and there is diversity of citizenship between some members of the proposed class and Defendant.

9. This court has personal jurisdiction over Defendant because it conducts and transacts business within New York and contracts to supply and supplies goods within New York.

10. Venue is proper because Plaintiff and many class members reside in this District and Defendant does business in this District and in New York. Additionally, a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

11. Plaintiff Piotroski is a resident of Massapequa, New York. Plaintiff Piotroski purchased Defendant's Products while in Massapequa during the Class Period because she saw the Product's labeling with the French Representations. Plaintiff Piotroski brings the claims below seeking damages, actual and statutory.

12. Defendant La Fermière, Inc. is a Delaware corporation with a principal place of

---

and plain. In addition, there are seasonal flavors including pumpkin spice and chestnut.

2

business in Jersey City, New Jersey.

13. On information and belief, in committing the wrongful acts alleged herein, Defendant, in connection with its subsidiaries, affiliates, and/or other related entities and their employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and Defendant participated in the making of such representations in that it disseminated those misrepresentations or caused them to be disseminated.

## SUBSTANTIVE ALLEGATIONS

**A. Defendant deliberately deceives consumers by falsely labeling the Products with the French Representations.**

14. Today's consumers are faced with increasing commercialization of products and seek brands that are genuine.

15. For many consumers, authenticity has overtaken quality as the prevailing purchasing criterion.

16. Manufacturers and marketers use origin claims to distinguish their products from other products, knowing consumers rely on the accuracy of those claims in making their purchasing decisions. In fact, consumers are willing to pay premium prices for Products that are authentically connected to a significant geographical area.

17. Consumers often pay a price premium for what they perceive to be authentic products, particularly those perceived to be authentically associated with a specific place, such as France, in the case of Defendant's Products.

18. In the present instance, consumers expect Defendant's products to be made in France.

19. Consumers have an expectation that a product made in such a location and imported to the United States will be of higher quality than those made in the United States.

20. Upon information and belief, Defendant runs the United States operations for a French-based company that manufactures, labels, distributes, and sells yogurt in France and throughout Europe.

21. Defendant manufactures labels, distributes, and sells yogurt products throughout the United States.

22. The yogurts are sold in several flavors, including vanilla bean, pressed lemon, orange blossom honey, rose, lavender, mango passion fruit, raspberry blueberry, peach apricot, strawberry pomegranate, salted caramel, pineapple coconut, and plain. In addition, there are seasonal flavors, including pumpkin spice and chestnut.

23. The front label on the Products are all identical, except for the name of the flavor, the picture associated with the flavor, the size of the jar, and a "Seasonal Flavor" stamp for the seasonal flavors.

24. Defendant's Products are in glass and terra cotta jars, which unlike the ones sold in France, contain the words "Naturally French" on their front labels.

25. Examples of the front labels of several flavors are below:







**B.     Reasonable consumers reasonably relied on Defendant's misrepresentations to their detriment.**

26.     Despite Defendant's labeling of the Products with the French Representations, the Products are from New York.

27.     On March 31, 2022, Taste France, an entity steered by the French Ministry of Agriculture and Food reported on La Fermiere opening a new factory in the United States to meet rising demand. In the article, which includes numerous quotes from Defendant's CEO, it states, "[h]is products, which are labelled "*Naturally French,*" benefit from the "Made in France"

5

reputation, which is very popular with American consumers.[2]"

28. Defendant's labeling of the Products with the French Representations demonstrates its intent to persuade consumers that the Products are made in France. However, as described above, the Products are from New York.

29. Hence, Defendant's representations that the Products are from France are false and misleading.

30. Reasonable consumers, including Plaintiff, purchased the Products based upon their belief that the Products were made in France. However, a reasonable consumer would not deem the Products to be made in France if they knew the Products were from New York.

31. Defendant's misrepresentations cause confusion among consumers, who believe they are purchasing yogurt imported from France, when, in fact, they are purchasing yogurt made in the United States.

32. Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

**C.   Defendant's wrongful conduct caused Plaintiff's and the Class members' injuries.**

33. Defendant knows that consumers are willing to pay more for French yogurt products due to their perception that they are of better quality and believe they are paying costs associated with importing French products to the United States over competing American yogurt products.

34. As a result of these unfair and deceptive practices, Defendant has likely collected millions of dollars from the sale of the Products that it would not have otherwise earned. Plaintiff

---

[2] https://tastefranceforbusiness.com/la-fermiere-desserts-are-poised-to-take-over-the-u-s-a/ (last accessed, October 21, 2022)

and Class members paid money for yogurt products that are not what they purported to be or what they bargained for. They paid a premium for French products when they could have instead bought other, less expensive, American yogurt. By way of example, on FreshDirect, a 4.9-ounce jar of La Fermière yogurt sells for $3.49.[3] A price of 69 cents per fluid ounce. On the same website, FreshDirect, Oui, also not imported from France, sells a jar of 5 oz yogurt for 2.09.[4] A price of 42 cents per ounce.



35. In making the false, misleading, and deceptive representations and omissions

---

[3] Freshdirect, https://www.freshdirect.com/pdp.jsp?productId=dai_pid_2004651&catId=dai_yogur_regu (last visited February 23, 2023).
[4] Freshdirect, https://www.freshdirect.com/pdp.jsp?productId=dai_pid_2004958&catId=dai_yogur_regu (last visited February 23, 2023).

7

described herein, Defendant knew and intended that consumers would pay for, and/or pay a premium for, Products labeled with the French Representations. As a result, Plaintiff and the Class members were injured in that they:

    a. Paid a sum of money for the Products, which were not what Defendant represented;

    b. Paid a premium price for the Products, which were not what Defendant represented;

    c. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented; and

    d. Were of a different quality than what Defendant promised.

36. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased, and/or Plaintiff and the Class members would not have been willing to purchase the Products at all.

37. Plaintiff and the Class members paid for Products that were represented as being from France but received Products that were from New York. The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

38. Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing the label.

39. Plaintiff and the Class members all paid money for the Products. However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchased and/or paid more

for the Products than they would have had they known the truth about the Products. Consequently, Plaintiff and the Class members have suffered an injury in fact, and lost money as a result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

40. The class is defined as all consumers who purchased at least one of the Products in New York at any time during the period of February 28, 2020, to the date of class certification ("Class").

41. A class action is superior to other methods for fair and efficient adjudication.

42. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

43. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff(s) and class members are entitled to damages.

44. Plaintiff's claims and the basis for relief are typical of those of other members because all were subjected to the same representations.

45. Plaintiff is an adequate representative because her interests do not conflict with other members.

46. No individual inquiry is necessary because the focus is only on Defendant's practices, and the class is definable and ascertainable.

47. Individual actions would risk inconsistent results, be repetitive, and are impractical to justify, as the claims are modest.

48. Plaintiff's counsel are competent and experienced in complex class action litigation and intend to adequately and fairly protect class members' interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349

**(On Behalf of Plaintiff and Other Class Members)**

49. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

50. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

51. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the other Class Members seek monetary damages.

52. Defendant misleadingly, inaccurately, and deceptively presents its Products to consumers.

53. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and other Class Members to purchase and/or pay a premium for Defendant's Products and to use the Products when they otherwise would not have.

54. Defendant made its untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

55. Plaintiff and other Class Members have been injured inasmuch as they paid a premium for Products. Accordingly, Plaintiff and other Class Members received less than what they bargained or paid for.

56. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and

Plaintiff and other members of the Class have been damaged thereby.

57. As a result of Defendant's recurring deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary and compensatory damages of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350

**(On Behalf of Plaintiff and Other Class Members)**

58. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

60. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

61. Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products are made in France.

11

62. Plaintiff and other Class Members have been injured inasmuch as they paid a premium for the Products, which, contrary to Defendant's representations, were false and deceptive. Accordingly, Plaintiff and other Class Members received less than what they bargained or paid for.

63. Defendant's packaging and product labeling induced Plaintiff and Class Members to buy Defendant's Products.

64. Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65. Defendant made the material misrepresentations described in this Complaint in Defendant's Products' packaging and labeling.

66. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact on consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

67. As a result of Defendant's recurring acts and practices in violation of GBL § 350, Plaintiff and Class Members are entitled to monetary and compensatory damages for all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs as well as statutory damages of $500 per unit purchased.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the Class;

2. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3. Awarding damages and interest;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues.

Dated: February 28, 2023

Respectfully submitted,

**REESE LLP**
*/s/Charles D. Moore*
Charles D. Moore
cmoore@reesellp.com
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55412
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**REESE LLP**
Michael R. Reese
mreese@reesellp.com
Sue J. Nam
snam@reesellp.com
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**BEN TRAVIS LAW, APC**
Ben Travis
ben@bentravislaw.com
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Phone: (619) 353-7966

*Counsel for Plaintiff and the Proposed Class*